IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

BENJAMIN FRANKLIN,

                                             Plaintiff,

              v.                               Civil Action No.
                                               9:03-CV-01452 (LEK/DEP)

ONEIDA CORRECTIONAL
FACILITY, *et al.*,

                                             Defendants.

_____

<u>APPEARANCES</u>:                      <u>OF COUNSEL</u>:

<u>FOR PLAINTIFF</u>:

BENJAMIN FRANKLIN, *pro se*

<u>FOR DEFENDANTS</u>:

OFFICE OF ATTORNEY GENERAL      RISA L. VIGLUCCI, ESQ.
The Capitol                     Assistant Attorney General
Albany, New York 12224

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

         Plaintiff Benjamin Franklin, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this civil rights

action pursuant to 42 U.S.C. § 1983 claiming deprivation of his

constitutional rights during the course of his confinement.  In his complaint, plaintiff alleges that as a result of the failure of prison officials to adequately protect him he was assaulted on several occasions by corrections officers and denied medical treatment for injuries suffered during the course of those incidents.  Plaintiff asserts that defendants' actions constituted cruel and unusual punishment, in violation of the Eighth Amendment, and seeks relief of an unspecified nature.

Currently pending before the court is a motion by the defendants requesting the entry of summary judgment dismissing plaintiff's complaint, both procedurally based upon Franklin's alleged failure to satisfy his obligation to exhaust available internal administrative remedies before filing suit, and on the merits, arguing that as a matter of law plaintiff cannot establish the existence of a constitutional deprivation under the Eighth Amendment.  Having carefully considered the record now before the court I am unable to conclude at this juncture that that plaintiff's claims are procedurally barred, in light of his contention that he chose not to file a grievance as a result of threats of retaliation by prison officials, and further based upon the fact that in response to a complaint registered by him with the Commissioner of the New York State Department of Correctional

Services ("DOCS"), a full investigation was conducted into the plaintiff's allegations, thereby fulfilling the objective of the grievance requirement. Turning to the merits, I find that the facts surrounding plaintiff's excessive force claims are genuinely disputed, and recommend against dismissal of those claims.[1]

I.      BACKGROUND[2]

At the times relevant to his claims plaintiff was a prison inmate entrusted to the custody of the DOCS.  Prior to his temporary transfer into the Downstate Correctional Facility on May 16, 2003, plaintiff was assigned to a special housing unit ("SHU") cell within the Oneida County Correctional Facility ("Oneida"), located in Oneida, New York.[3]  Plaintiff maintains that while in SHU confinement, he was regularly assaulted by corrections officers, including defendants Austin and Mullen, denied lunch,

---

[1]      Defendants' motion does not address the merits of plaintiff's failure to protect and medical indifference claims.

[2]      In light of the procedural posture of the case, the record now before the court has been interpreted in a light most favorable to the plaintiff, as a non-moving party, with all inferences drawn, and ambiguities resolved, in his favor.  *See Wells-Williams v. Kingsboro Psychiatric Ctr.*, No. 03-CV-134, 2007 WL 1011545, at *2 (E.D.N.Y. Mar. 30, 2007) (citations omitted).

[3]      Plaintiff's confinement in the SHU was apparently disciplinary in nature, stemming from his involvement in a fight with a fellow inmate.  Fourth Amended Complaint (Dkt. No. 26) ¶¶ 8, 16.

and refused medical attention both for the injuries suffered in the fight which led to his transfer into the unit and those resulting from the ensuing staff assaults. *Id.* ¶¶ 18-24. While maintaining that the assaults were continuous during the time of his SHU confinement, plaintiff's complaint makes specific reference to beatings by Austin and Mullen on March 21, 2003, and again on April 7, 2003. *Id.* ¶¶ 16-24, 26. Plaintiff also asserts that prior to the first such assault, he informed defendant Santos that he feared for his safety based upon threats made by those two officers. *Id.* ¶¶ 9-10.

In support of their motion, defendants Mullen and Austin have submitted affidavits in which they deny having assaulted the plaintiff. Mullen Aff. (Dkt. No. 64-11) ¶ 5; Austin Aff. (Dkt. No. 64-10) ¶ 5. In addition, Corrections Officer Mullen notes that he was not even present and working at Oneida on April 7, 2003, one of the two dates specifically mentioned in plaintiff's complaint. Mullen Aff. (Dkt. No. 64-11) ¶ 8.

Sometime prior to May 22, 2003, at which time he was designated to the Upstate Correctional Facility, Franklin sent a handwritten letter to the DOCS Commissioner complaining of various conditions including, *inter*

4

*alia,* the assaults which are the subject of this action.[4]  *See* Viglucci Aff. (Dkt. No. 64-6) Exh. A.  That letter prompted an investigation into Franklin's allegations, consisting of interviews of the parties involved, including the plaintiff.  *Id.*  As a result of that investigation DOCS officials concluded that plaintiff's allegations were unfounded, and he was advised of that determination.  *See generally* Fourth Amended Complaint (Dkt. No. 26); *see also generally* Franklin Aff. (Dkt. No. 70).

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on December 5, 2003, and was thereafter granted leave to proceed *in forma pauperis*.[5]  Dkt. Nos. 1, 3. Following the issuance of orders deeming plaintiff's earlier pleadings to be deficient, *see, e.g.,* Dkt. Nos. 5, 12, 15, 25, plaintiff submitted a fourth amended complaint which was ultimately approved for filing.  Dkt. Nos. 26, 28.  Named as defendants in plaintiff's fourth amended complaint are various DOCS employees, including Corrections Lieutenant Santos,

---

[4]      Upstate is a maximum security prison comprised exclusively of special housing unit ("SHU") cells in which inmates are confined, generally though not always for disciplinary reasons, for twenty-three hours each day.  *See Samuels v. Selsky*, No. 01 CIV. 8235, 2002 WL 31040370, at *4 n.11 (S.D.N.Y. Sept. 12, 2002).

[5]      This action was originally commenced in the Western District of New York, but was subsequently transferred here by order issued by Senior District Judge John T. Elfin on December 5, 2003.  Dkt. Nos. 1, 4.

Corrections Officers D.J. Mullen and Austin, and an additional corrections officer identified only as "John Doe".  *See* Dkt. No. 26.  Plaintiff's complaint, which is modest in terms of specifics, asserts claims of cruel and unusual punishment, based both upon the alleged use of excessive force by defendants Mullen and Austin, the failure of defendant Santos to protect him from those officers, and the refusal of the defendants to provide him with required medical treatment.  *Id.*

On June 27, 2007, following the close of pretrial discovery, defendants moved seeking the entry of summary judgment dismissing plaintiff's complaint.  Dkt. No. 64.  In their motion, defendants argue that plaintiff's claims are procedurally barred, based upon his failure to exhaust available administrative remedies before filing suit, and additionally assert that as a matter of law, the record fails to establish the existence of an Eighth Amendment violation.  *Id.*  Plaintiff has since filed papers in opposition to defendants' motion, Dkt. No. 70, which is now ripe for determination and has been referred to me for the issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See also* Fed.R.Civ.P 72(b).

III.   <u>DISCUSSION</u>

A.   <u>Summary Judgment Standard</u>

Summary judgment is governed by Rule 56 of the Federal Rules of

Civil Procedure.  Under that provision, summary judgment is warranted

when "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits . . . show that there is no

genuine issue as to any material fact and that the moving party is entitled

to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *see Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986);

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S. Ct. 2505,

2509-10 (1986); *Security Ins. Co. of Hartford v. Old Dominion Freight*

*Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir. 2004).  A fact is "material", for

purposes of this inquiry, if it "might affect the outcome of the suit under the

governing law."  *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510; *see also*

*Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (citing

*Anderson*).  A material fact is genuinely in dispute "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party."

*Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.  Though *pro se* plaintiffs

are entitled to special latitude when defending against summary judgment

motions, they must establish more than mere "metaphysical doubt as to

7

the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith*

*Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court

to consider whether *pro se* plaintiff understood nature of summary

judgment process).

When summary judgment is sought, the moving party bears an initial

burden of demonstrating that there is no genuine dispute of material fact

to be decided with respect to any essential element of the claim in issue;

the failure to meet this burden warrants denial of the motion.  *Anderson*,

477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83.

In the event this initial burden is met, the opposing party must show,

through affidavits or otherwise, that there is a material issue of fact for

trial.  Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553;

*Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve

any ambiguities, and draw all inferences from the facts, in a light most

favorable to the nonmoving party.  *Jeffreys*, 426 F.3d at 553; *Wright v.*

*Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998).  Summary judgment is

inappropriate where "review of the record reveals sufficient evidence for a

8

rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

   B.   Failure to Exhaust Administrative Remedies

   The record now before the court reflects that the plaintiff did not file a formal grievance, utilizing the available procedures within the DOCS system, concerning the matters raised in his complaint.  Plaintiff attributes this failure to his belief that DOCS prison officials would not process any grievance from him concerning the matter, and additionally notes that he has been threatened by corrections officers with retribution for filing any grievances against them.  *See, e.g.,* Plaintiff's Opposition (Dkt. No. 70) at p. 30, ¶¶ 6-8.  In their motion, defendants argue that this omission provides a procedural basis for dismissal of plaintiff's claims, regardless of their relative merit.

   With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits[,]" *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002), Congress altered the inmate litigation landscape

considerably through the enactment of the Prison Litigation Reform Act of

1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), imposing

several restrictions on the ability of prisoners to maintain federal civil rights

actions.  An integral feature of the PLRA is a revitalized exhaustion of

remedies provision which requires that "[n]o action shall be brought with

respect to prison conditions under section 1983 of this title, or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional

facility until such administrative remedies as are available are exhausted."

42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S. Ct.

2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003,

at *5-6 (E.D.N.Y. Jan. 31, 2007).  This limitation is intended to serve the

dual purpose of affording "prison officials an opportunity to resolve

disputes concerning the exercise of their responsibilities before being

haled into courtl[,]" and to improve the quality of inmate suits filed through

the production of a "useful administrative record."  *Jones v. Bock,* 549

U.S. 199, 127 S. Ct. 910, 914-15 (2007) (citations omitted); *see*

*Woodford,* 548 U.S. at 91-92, 126 S.Ct. at 2386; *see also Johnson v.*

*Testman,* 380 F.3d 691, 697 (2d Cir. 2004).  "[T]he PLRA's exhaustion

requirement applies to all inmate suits about prison life, whether they

10

involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter*, 534 U.S. at 532, 122 S. Ct. at 992 (citation omitted).

The failure of a prisoner to satisfy the PLRA's exhaustion requirement is not jurisdictional, but instead gives rise to a defense which must affirmatively be raised by a defendant in response to an inmate suit. *Jones,* 127 S. Ct. at 918.  In the event a defendant named in such an action establishes that the inmate plaintiff failed properly to exhaust available remedies prior to commencing the action, his or her complaint is subject to dismissal.  *See Pettus v. McCoy*, No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y. Sept. 13, 2006) (McAvoy, J.); *see also Woodford*, 548 U.S. at 94-95, 126 S. Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of available remedies).  "Proper exhaustion" requires a plaintiff to procedurally exhaust his or her claims by "compl[ying] with the system's critical procedural rules."  *Woodford*, 548 U.S. at 95, 126 S. Ct. at 2388; *see also Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (citing *Woodford*).  While placing prison officials on notice of a grievance through less formal channels may constitute claim exhaustion "in a substantive sense", an inmate plaintiff nonetheless must meet the

11

procedural requirement of exhausting his or her available administrative remedies within the appropriate grievance construct in order to satisfy the PLRA.  *Macias*, 495 F.3d at 43 (quoting *Johnson*, 380 F.3d at 697-98) (emphasis omitted).

In a series of decisions rendered since the enactment of the PLRA, the Second Circuit has crafted a three-part test for determining whether dismissal of an inmate plaintiff's complaint is warranted for failure to satisfy the PLRA's exhaustion requirement.  *Macias*, 495 F.3d at 41; *see Hemphill v. New York,* 380 F.3d 680, 686 (2d Cir. 2004).  Under the prescribed algorythm, a court must first determine whether administrative remedies were available to the plaintiff at the relevant times.  *Macias,* 495 F.3d at 41; *Hemphill,* 380 F.3d at 686.  If such a remedy existed and was available, the court must next examine whether the defendants have forfeited the affirmative defense of non-exhaustion by failing to properly raise or preserve it or whether, through their own actions, by preventing the exhaustion of plaintiff's remedies, they should be estopped from asserting failure to exhaust as a defense.  *Macias*, 495 F.3d at 41; *Hemphill*, 380 F.3d at 686.  In the event the proffered defense survives these first two levels of scrutiny, the court lastly must examine whether

12

special circumstances nonetheless exist and "have been plausibly

alleged" to justify the plaintiff's failure to comply with the applicable

administrative procedural requirements.[6]  *Macias*, 495 F.3d at 41;

*Hemphill*, 380 F.3d at 686.

### 1.   Availability of Remedy

New York prison inmates are subject to an Inmate Grievance

Program ("IGP") established by the DOCS, and recognized as an

"available" remedy for purposes of the PLRA.  *See Mingues v. Nelson*,

No. 96 CV 5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing

*Mojias v. Johnson*, 351 F.3d 606 (2d Cir. 2003) and *Snider v. Melindez*,

199 F.3d 108, 112-13 (2d Cir.1999)).  The IGP consists of a three-step

review process.  First, a written grievance is submitted to the Inmate

Grievance Review Committee ("IGRC") within twenty-one days of the

incident.[7]  7 N.Y.C.R.R. § 701.5(a).  The IGRC, which is comprised of

inmates and facility employees, then issues a determination regarding the

grievance.  *Id.* §§ 701.4(b), 701.5(b).  If an appeal is filed, the

---

[6]     In practicality these three prongs of the prescribed test, though intellectually distinct, plainly admit of significant overlap.  *See Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *8 n.14 (E.D.N.Y. Jan. 31, 2007); *see also Giano v. Goord*, 380 F.3d 670, 677 n.6 (2d Cir. 2004).

[7]     The IGP supervisor may waive the grievance timeliness requirement due to "mitigating circumstances."  7 N.Y.C.R.R. § 701.6(g)(1)(i)(a)-(b).

superintendent of the facility next reviews the IGRC's determination and

issues a decision.  *Id.* § 701.5(c).  The third level of the process affords

the inmate the right to appeal the superintendent's ruling to the Central

Office Review Committee ("CORC"), which makes the final administrative

decision.  *Id.* § 701.5(d).  Ordinarily, absent the finding of a basis to

excuse non-compliance with this prescribed process, only upon

exhaustion of these three levels of review may a prisoner seek relief

pursuant to section 1983 in a federal court.  *Reyes v. Punzal*, 206 F.

Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing, *inter alia*, *Sulton v. Greiner*,

No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

     Certain of plaintiff's claims implicate misconduct on the part of

corrections officials.  In addition to the established IGP described above,

the DOCS has implemented an expedited grievance process to address

complaints of alleged staff harassment.[8]  7 N.Y.C.R.R. § 701.8; *see Perez*

*v. Blott,* 195 F. Supp. 2d 539, 543 (S.D.N.Y. 2002) (describing expedited

grievance process under prior relevant regulation, 7 N.Y.C.R.R. § 701.11,

which has since been re-codified).  This expedited process is not

exclusive, and does not preclude the filing of an ordinary grievance in the

---

[8]    Before utilizing this procedure, an inmate generally should first report any
incident to an employee's supervisor.  7 N.Y.C.R.R. § 701.8(a).

event of perceived staff harassment or retaliation.[9]  *See* 7 N.Y.C.R.R. §

701.8(a).  An inmate claiming harassment by a DOCS worker must file a

grievance, which is then assigned a grievance number and, in the event of

allegations of staff harassment, forwarded to the superintendent of the

facility.  7 N.Y.C.R.R. § 701.8(b).  If, after reviewing the grievance, the

superintendent finds it to be facially lacking in merit, the matter reverts

back to the inmate grievance resolution committee ("IGRC") for review.  7

N.Y.C.R.R. § 701.8(c).  If, on the other hand, the superintendent believes

that an investigation is warranted, he or she may initiate an in-house

investigation, or instead, request investigation by the inspector general's

office.  7 N.Y.C.R.R. § 701.8(d).  Once the grievance is determined, a

matter which must occur within twenty-five business days of filing, *see* 7

N.Y.C.R.R. § 701.8(f), the inmate may appeal to the CORC, a step which

is required in order to satisfy the exhaustion requirement.  *See Singh v.*

*Goord*, 520 F. Supp. 2d 487, 495 (S.D.N.Y. 2007) (indicating that appeal

to the CORC is required to exhaust a prisoner's administrative remedies in

New York State); *Sulton v. Greiner*, No. 00 Civ. 0727, 2000 WL 1809284,

---

[9]        The regulations pertaining to the grievance process describe harassment as any allegation involving "employee misconduct meant to annoy, intimidate, or harm an inmate . . . ."  7 N.Y.C.R.R. § 701.2(e); *see also* DOCS Directive No. 4040.

at *4 (S.D.N.Y. Dec. 11, 2000) (granting summary judgment for failure to exhaust administrative remedies where prisoner neglected to appeal to the CORC).

Despite this entitlement under most circumstances to file and pursue a grievance in accordance with the IGP, there are circumstances under which the grievance procedure nonetheless is deemed not to have been available to an inmate plaintiff.  *See Hemphill*, 380 F.3d at 687-88.  Thus, for example, "[e]xhaustion may be considered unavailable in situations where plaintiff is unaware of the grievance procedures or did not understand it, . . . or where defendants' behavior prevents plaintiff from seeking administrative remedies."  *Hargrove,* 2007 WL 389003, at *8 (citations omitted) (noting, for example, that a defendant's failure to advance plaintiff's grievances or the issuance of threats against an inmate to deter the filing of a grievance may effectively render the administrative process unavailable).  When testing the availability of administrative remedies in the face of claims that undue influence from prison workers has caused a plaintiff inmate to forego the formal grievance process, courts employ an objective test, examining whether "a similarly situated individual of ordinary firmness [would] have deemed them available."  *Id.*

16

at 688 (internal quotations and citations omitted); *see Hargrove,* 2007 WL 389003, at *8.

Based on the record now before the court, construed in a light most favorable to the plaintiff, it appears that a genuine triable issue of fact exists regarding the availability of the IGP to the plaintiff.  As was previously noted, plaintiff asserts that he received specific threats of adverse action against him in the event of the filing of any grievances. Under the circumstances the court is unable to conclude at this stage in the proceedings, as a matter of law, that the grievance process was available to the plaintiff.

## 2.    Presentation of Defense/Estoppel

_____The second prong of the *Hemphill* analysis focuses upon "whether the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether the defendants' own actions inhibiting the inmate's exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Hemphill,* 380 F.3d at 686 (citations omitted).  In their answer to plaintiff's fourth amended complaint, defendants have raised failure to exhaust as an affirmative defense.  *See* Answer (Dkt. No. 37) ¶ 10.

17

Because the defendants have properly raised exhaustion as a defense, and plaintiff does not assert any basis to estop them from pursuing it, I find that this prong of the exhaustion test does not come into play in this case.

### 3.   Special Circumstances

The third, catchall factor to be considered under the Second Circuit's prescribed exhaustion rubric focuses upon whether special circumstances have been plausibly alleged which, if demonstrated, would justify excusing a plaintiff's failure to exhaust administrative remedies. *Hemphill,* 380 F.3d at 689; *see also Giano v. Goord,* 380 F.3d 670, 676-77 (2d Cir. 2004); *Hargrove,* 2007 WL 389003, at *10.  Among the circumstances potentially qualifying as "special" under this prong of the test include where a plaintiff's reasonable interpretation of applicable regulations regarding the grievance process differs from that of prison officials and leads him or her to conclude that the dispute is not grievable. *Giano*, 380 F.3d at 676-77; *see also Hargrove,* 2007 WL 389003, at *10 (quoting and citing *Giano*).  As the Supreme Court has noted, "[t]he benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.  The prison grievance

18

system will not have such an opportunity unless the grievance complies with the system's critical procedural rules." *Woodford,* 548 U.S. at 95, 126 S.Ct. at 2388.

In this instance, prompted by plaintiff's letter complaining of the use of excessive force and other deprivations to the DOCS Commissioner, an investigation was conducted into plaintiff's allegations. While in this case the established IGP procedure or the alternative expedited procedure for complaining of staff misconduct was bypassed by the plaintiff, his complaint to the Commissioner resulted in what could be viewed as the functional equivalent of a grievance investigation. Since at trial a finding may be made that the filing of a grievance would have been redundant, and likely would ultimately have led to the same result, with deference undoubtedly being given to the investigation previously conducted, it cannot be definitively said at this point that there exists no sufficient basis to excuse the exhaustion requirement. Accordingly, I recommend denial of the portion of defendants' motion which asserts this procedural basis for dismissal of plaintiff's claims. *See Heath v. Saddlemire*, No. 96-CV-1998, 2002 WL 31242204, at *4-5 (N.D.N.Y. Oct. 7, 2002) (Scullin, C.J.).

C.     Merits Of Plaintiff's Excessive Force Claim

19

In their motion, defendants next assert that plaintiff's excessive force claim is subject to dismissal as a matter of law.  While acknowledging that plaintiff claims to have been assaulted by prison officials, defendants argue that "[p]laintiff's allegations are so outrageous, that they can only be considered to have been fabricated."  Defendants' Memorandum (Dkt. No. 64-3) at 7.

A plaintiff's constitutional right against cruel and unusual punishment is violated by an "unnecessary and wanton infliction of pain."  *Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1076, 1084 (1986) (citations and quotations omitted); *Griffen v. Crippen,* 193 F.3d 89, 91 (2d Cir. 1999). The lynchpin inquiry in deciding claims of excessive force against prison officials is "whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Hudson v. McMillian,* 503 U.S. 1, 6-7, 112 S. Ct. 995, 998 (1992) (applying *Whitley* to all excessive force claims); *Whitley*, 475 U.S. at 320-21, 106 S. Ct. at 1085 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied sub nom.*, *John v. Johnson*, 414 U.S. 1033, 94 S. Ct. 462 (1973)).

Eighth Amendment analysis requires both objective and subjective

examinations.  *Hudson,* 503 U.S. at 8, 112 S. Ct. at 999; *Wilson v. Seiter*,

501 U.S. 294, 298-99, 111 S. Ct. 2321, 2324 (1991); *Griffen*, 193 F.3d at

91.  The objective prong of the inquiry is contextual, and relies upon

"contemporary standards of decency."  *Hudson*, 503 U.S. at 8 (quoting

*Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290 (1976)).  When

addressing this component of an excessive force claim under the Eighth

Amendment calculus, the court can consider the extent of the injury

suffered by the inmate plaintiff.  While the absence of significant injury is

certainly relevant, it is not dispositive, as the defendants seemingly

suggest.  *Hudson*, 503 U.S. at 7, 112 S. Ct. at 999.  The extent of an

inmate's injury is but one of the factors to be considered in determining a

prison official's use of force was "unnecessary and wanton"; courts should

also consider the need for force, whether the force was proportionate to

the need, the threat reasonably perceived by the officials, and what, if

anything, the officials did to limit their use of force.  *Whitley*, 475 U.S. at

321, 106 S. Ct. at 1085 (citing *Johnson*, 481 F.2d at 1033).  Under

*Hudson*, even if the injuries suffered by a plaintiff "'were not permanent or

severe'", a plaintiff may still recover if "'the force used was unreasonable

and excessive.'"  *Corselli v. Coughlin*, 842 F.2d 23, 26 (2d Cir. 1988)

(quoting *Robinson v. Via*, 821 F.2d 913, 924 (2d Cir.1987)).

Turning to the subjective element to prevail a plaintiff must establish that defendant acted with a sufficiently culpable state of mind. *Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994) (citing *Hudson*, 503 U.S. at 8, 112 S. Ct. at 999). That determination is informed by four factors, including 1) the need for application of force; 2) the relationship between that need and the amount of force used; 3) the threat reasonably perceived by the responsible officials; and 4) any efforts made to temper the severity of a forceful response. *Whitley*, 475 U.S. at 321, 106 S. Ct. at 1085. The principal focus of this inquiry "turns on 'whether force was applied in a good faith effort to maintain discipline or maliciously and sadistically for the very purpose of causing harm.'" *Whitley*, 475 U.S. at 320-21, 106 S. Ct. at 1085 (quoting *Johnson v. Glick,* 481 F.2d at 1033. When considering the subjective element of the governing Eighth Amendment test, a court must consider that the absence of serious injury, though relevant, does not necessarily negate a finding of wantonness since, as the Supreme Court has noted,

> [w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. . . . This is true whether or not significant injury is evident.

> Otherwise, the Eighth Amendment would permit
> any physical punishment, no matter how diabolic or
> inhuman, inflicting less than some arbitrary quantity of injury.

*Hudson*, 503 U.S. at 9, 112 S. Ct. at 1000 (citations omitted); *Velasquez*

*v. O'Keefe*, 899 F. Supp. 972, 973 (N.D.N.Y. 1995) (McAvoy, C.J.)

(quoting *Hudson*, 503 U.S. at 9, 112 S. Ct. at 1000); *see Romaine v.*

*Rewson,* 140 F. Supp. 2d 204, 211 (N.D.N.Y. 2001) (Kahn, J.).  Even a *de*

*minimis* use of physical force can constitute cruel and unusual punishment

if it is "repugnant to the conscience of mankind."[10]  *Hudson*, 503 U.S. at 9-

10, 112 S. Ct. 1000 (citations omitted).

In his complaint, though unsworn, *see* Dkt. No. 26 ¶¶ 19-21, and as

confirmed in affidavits provided in opposition to defendants' motion, *see*

Dkt. No. 70 at pp. 10, 27, plaintiff claims to have been assaulted by

defendants Austin and Mullen.  In support of their motion, defendants

assert that the allegations are fabricated and inherently incredible, and

thus should be discounted as a matter of law.  In support of that position,

---

[10]     It should be noted, however, that in practice a truly *de minimis* use of force will rarely suffice to state a constitutional claim.  *Hudson,* 503 U.S. at 9-10, 112 S. Ct. at 1000 ("[Not] every malevolent touch by a prison guard gives rise to a federal cause of action"); *Griffen*, 193 F.3d at 91 (citing *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir. 1993)); *Johnson*, 481 F.2d at 1033 ("Not every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights").

defendants offer the denial by those corrections officers of any wrongdoing, the results of an investigation by the DOCS in which the allegations were determined to be unfounded, and particulars regarding the procedures at Oneida which, they maintain, make it impossible for the actions to have occurred as described by the plaintiff, without detection.

As tempting as it may be to conclude that defendants will ultimately prevail at trial, defendants' invitation to make a credibility determination and reject plaintiff's version of the events on motion for summary judgment is plainly unwarranted.  Under these circumstances I recommend a finding that genuine, triable issues of material fact exist which must be resolved before plaintiff's excessive force claims can be adjudicated.

IV.   <u>SUMMARY AND RECOMMENDATION</u>

While the record in this case firmly establishes that plaintiff did not pursue an internal claim under the IGP relating to the violations asserted in his complaint in this action, the record also discloses the existence of fact questions regarding whether he should be excused from that requirement, and additionally whether the claim should be deemed to be exhausted by virtue of his complaint to the DOCS Commissioner and a

subsequent investigation into that complaint.  Turning to the merits of the only portion of plaintiff's Eighth Amendment claim now challenged, I find the existence of triable issues of material fact surrounding plaintiff's excessive force claim against the defendants and therefore recommend the denial of summary judgment dismissing that claim as a matter of law.

Based upon the foregoing it is hereby

RECOMMENDED that defendants' motion for summary judgment dismissing plaintiff's complaint (Dkt. No. 64) be DENIED in its entirety.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

The clerk is directed to promptly forward a copy of this order to the plaintiff by regular mail and defendant via electronic means.

25

Dated:      May 21, 2008
            Syracuse, New York


_____
David E. Peebles
U.S. Magistrate Judge